STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-393

DIRIGO PEDIATRIC DENTISTRY,
P.C.,

        Plaintiff/Counterclaim
        Defendant

v.

DAVID C. HALUSKA, DMD, PLLC,
d/b/a DIRIGO DENTISTRY,

        Defendant/Counterclaim
        Plaintiff

ORDER ON MOTION FOR SUMMARY
JUDGMENT

## I. Background

Plaintiff Dirigo Pediatric Dentistry, P.C. ("DPD") is a specialty pediatric dental practice located in Yarmouth, Maine and owned by Michael Dowling, DMD. (Supp.'g S.M.F. ¶¶ 1-2.) DPD provides preventative services aimed specifically at young children, and treatment for children of all ages with significant special needs. (*Id.* ¶ 4.) Patients travel from all over the state to receive the specialized pediatric care provided by DPD. (*Id.* ¶ 5.)

On November 16, 2018, DPD filed a Certificate of Formation registering its name with the Maine Secretary of State and opened its doors to patients in May of 2019. (*Id.* ¶¶ 6, 10.) DPD filed a Service Mark Application on February 11, 2020, which was accepted by the Maine Secretary of State on February 12, 2020. (*Id.* ¶ 12.) DPD's registered mark is a combination service mark which includes both text and graphic illustrations. (Add. S.M.F. ¶ 25.) Dr. Dowling began a strong marketing campaign in April of 2019, which included a significant social media presence. (Supp.'g

1

S.M.F. ¶ 9.) DPD posts regularly on Facebook and Instagram and has direct interactions with social media followers. (*Id.* ¶ 47.)

Defendant David C. Haluska, DMD, has provided general dentistry services to patients that include adults and children since 2012. (Add. S.M.F. ¶ 1.) Dr. Haluska's dental practice, Dirigo Dentistry, is located in Bangor, Maine, 120 miles from DPD, and offers general dentistry services to patients in the greater Bangor area and throughout the state of Maine. (Supp.'g S.M.F. ¶¶ 13-14; Add. S.M.F. ¶ 9.) Dr. Haluska treats children in the course of his general dentistry practice, but refers any specialty pediatric dental work to a pediatric dentist in the Bangor area. (Supp.'g S.M.F. ¶ 39.)

Dr. Haluska is the owner of the registered trademark "Dirigo Dentistry." He has used the name informally since 2016 by placing the mark on signs, letterhead and business cards. (Add. S.M.F. ¶ 3.) He filed a Statement of Intent to Transact Business Under an Assumed Name of "Dirigo Dentistry" on May 8, 2017. (Supp'g S.M.F. ¶ 17.) In November 2017, Dr. Haluska purchased the practice of retiring dentist Dr. Lausier in Bangor, Maine, and filed a Service Mark Application for the words "Dirigo Dentistry" on December 18, 2017. (*Id.* ¶¶ 18, 23.) Dirigo Dentistry's registered mark is text only and does not include any graphic or other illustration. (Add. S.M.F. ¶ 5.) Other than business cards, signage outside the practice building, and letterhead with the name Dirigo Dentistry, Dr. Haluska does not use any marketing efforts to brand or promote the practice or service mark. (Supp'g S.M.F. ¶ 37.)

While the texts of the marks only differ by the inclusion of the word "Pediatric," the two dental practices' graphical representations or logos are distinct. (*Id.* ¶ 44; Add. S.M.F. ¶ 25.) DPD's combination service mark includes text and graphic illustrations, featuring a gray and yellow lighthouse with blue water line and a gray flag with the word "Dirigo" written in a modified Source

2

Serif Variable font and white lettering. (Add. S.M.F. ¶ 25; Exhibit 23). "Pediatric" is yellow and "Dentistry" is orange; both words are written in MRF Lemonberry Sans font. (*Id.*) Dirigo Dentistry's registered mark is text only and does not include any graphic or other illustration. (Add. S.M.F. ¶ 5.)

The term "Dirigo" is on the State of Maine's flag and website, and one of the definitions of "Dirigo" included in Merriam-Webster's Dictionary is the "motto of Maine referring by analogy to the North Star appearing on the state seal." (Supp'g S.M.F. ¶¶ 42-3.)

There have been several instances of patient confusion between DPD and Dirigo Dentistry. (Add. S.M.F. ¶ 36.) These include a fax from a third-party vendor intended for DPD, an email from a parent of a DPD patient incorrectly sent to Dirigo's email address, and approximately ten phone calls made to Dirigo that were intended for DPD. (Add. S.M.F. ¶ 41.) There have been no instances where a person has shown up to Dr. Haluska's practice thinking they have an appointment with Dr. Dowling or looking for DPD. (Supp'g S.M.F. ¶ 57.) No patients have reported to Dr. Haluska's office that they drove to DPD in Yarmouth intended to report to Dr. Haluska's practice. (*Id.* ¶ 58.)

On April 25, 2019, Dr. Haluska sent Dr. Dowling a Cease and Desist Letter regarding the use of the practice's name, "Dirigo Pediatric Dentistry." (*Id.* ¶ 40.) Dr. Dowling replied to the letter but the parties were unable to reach a resolution.

DPD initiated a Declaratory Judgment action on October 1, 2019, seeking an order that his use of "Dirigo Pediatric Dentistry" does not infringe on any of Dr. Haluska's rights. On October 7, 2019, Dr. Haluska filed a response and brought counterclaims for infringement and unfair trade practices, among other claims. On January 29, 2021, plaintiff filed the instant Motion for Summary Judgment on its single- count Complaint for Declaratory Judgment.

3

## II. Standard of Review

A party is entitled to summary judgment when a review of the parties' statements of material facts and the record to which the statements refer demonstrate that there is no genuine issue as to any material fact in dispute, and that the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Id.* A "genuine issue" of material fact exists if the claimed fact would require a factfinder to "choose between competing versions of the truth." *Id.* (quoting *Farrington's Owners' Ass'n v. Conway Lake Resorts, Inc.*, 2005 ME 93, ¶ 9, 878 A.2d 504).

Properly supported statements of material fact are deemed admitted if the opposing party fails to properly controvert them. M.R. Civ. P. 56(h)(4); *Stanley v. Hancock County Comm'rs*, 2004 ME 157, ¶ 18, 864 A.2d 169. "Assertion of material facts must be supported by record references to evidence that is of a quality that would be admissible at trial." *HSBC Mortg. Servs. v. Murphy*, 2011 ME 59, ¶ 9, 19 A.3d 815.

## III. Discussion

Plaintiff seeks a declaration that use of the terms "Dirigo" and "Dentistry" in "Dirigo Pediatric Dentistry" do not infringe upon defendant's registered mark, "Dirigo Dentistry." By asking the court to declare that defendant does not have a protectable interest in his mark, plaintiff is in effect asking the court to declare that defendant does not have a trademark infringement claim against plaintiff. "[T]rademark claims brought under Maine law are treated the same as trademark claims brought under the Lanham Act." *165 Park Row, Inc. v. JHR Dev., LLC*, No. 2:12-cv-00106-NT, 2014 U.S. Dist. LEXIS 13577, at *6 n.2 (D. Me. Feb. 4, 2014). To establish a trademark infringement claim, a plaintiff must prove two elements: "(1) that its mark

4

is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." *Bos. Duck Tours, LP v. Super Duck Tours*, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

Plaintiff advances two arguments in support of its Motion for Summary Judgment. First, plaintiff argues that the terms "Dirigo and "Dentistry" are generic and geographically descriptive as a matter of law, and therefore not distinctive enough to be entitled to trademark protection. Second, plaintiff argues that the factual record on this motion demonstrates that there is no likelihood of consumer confusion.

## A. Distinctiveness

Trademarks are classified along a continuum from least to most distinctive: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768-69 (1992). "At one end of the spectrum there are generic terms that have passed into common usage to identify a product, such as aspirin, and can never be protected." *Bos. Beer Co., Ltd. P'ship v. Slesar Bros. Brewing Co.*, 9 F.3d 175, 180 (1st Cir. 1993). "In the middle are so-called descriptive terms, such as a geographical term, which can be protected but only if it has acquired 'secondary meaning,' by which consumers associate it with a particular producer or source." *Id.* Suggestive, arbitrary, and fanciful terms are "inherently distinctive" and can be protected without proof of secondary meaning. *Id.* "Whether a term is generic, descriptive, or inherently distinctive is a question of fact." *Id.*

Similarly, Maine's trademark statute provides that "[a] mark shall not be registered if it . . . [c]onsists of a mark that, when applied to the goods or services of the applicant, is merely descriptive or . . . is primarily geographically descriptive." 10 M.R.S. § 1522 (2021). "[A] geographical name . . . cannot be appropriated as a trademark." *Northern Outdoors, Inc. v.*

*Kennebec Brewing Co.*, No. CV-00-64, 2000 Me. Super. LEXIS 209, at *2 (Sept. 15, 2000) (citing *W.R. Lynn Shoe Co. v. Auburn-Lynn Shoe Co.*, 100 Me. 461, 466, 62 A. 499, 504 (1905)). There is an exception to this rule "when a trade name which contains a geographic term has attained a secondary or distinctive meaning." *Id.* at *2-3.

Defendant argues that Dirigo's independent Latin meaning and use outside of Maine means that it is not primarily "geographically descriptive" and that it has no more than a "mere association" with the state of Maine. (Def.'s Opp'n to Pl.'s Mot. Summ. J. 5-6.) Plaintiff argues "Dirigo" is exclusively associated with the state of Maine, appearing on the State of Maine's flag and serving as the state motto, that it has acquired the status of a geographically descriptive mark. (Pl.'s Mot. Summ. J. 7-8.) Plaintiff argues that allowing defendant to trademark the term "Dirigo" is essentially the same as allowing a business to trademark "Maine." (*Id.* at 8.)

While there is no disputing that "Dirigo" is strongly associated with the State of Maine, there are still issues of material fact as to whether "Dirigo" is a geographically descriptive term. The typical geographically descriptive term is a geographic name or the adjectival form thereof, not just a term with a strong association with a place. *See Northern Outdoors*, 2000 Me. Super. LEXIS 209 at *2 ("Kennebunk"); *see also 165 Park Row, Inc. v. JHR Dev., LLC*, No. 2:12-cv-00106-NT, 2014 U.S. Dist. LEXIS 13575 (D. Me. Feb. 4, 2014) ("Brunswick"); *In re Spirits of New Merced, LLC*, 85 USPQ2d 1614 (TTAB 2007) ("Yosemite"); *In re Jack's Hi-Grade Foods, Inc.*, 226 USPQ 1028 (TTAB 1985) ("Neapolitan"); *In re BankAmerica Corp.*, 231 USPQ 873 (TTAB 1986) ("Bank of America"). Plaintiff has not cited any cases where a court held that a state motto, or any other term which does not directly refer to a geographic location, is primarily geographically descriptive.

Whether "Dirigo" is a primarily geographically descriptive term is ultimately a question of fact. *See Bos. Beer Co.*, 9 F.3d at 180. Despite its strong association with the State of Maine, the Secretary of State has approved both trademarks, which suggests that the Secretary of State understood the term "Dirigo" to be distinctive enough to merit trademark protection.¹ *See* 10 M.R.S. § 1522(E). There is still an issue of material fact as to whether "Dirigo" is a geographically descriptive term.

## B. Likelihood of Confusion

In examining whether there is a likelihood of confusion, the First Circuit considers eight factors:

> (1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark.

*Volkswagenwerk Aktiengesellschaft v. Wheeler*, 814 F.2d 812, 817 (1st Cir. 1987). "On summary judgment the reviewing court must decide whether the evidence as a whole, taken most hospitably to the markholder, generates a triable issue as to likelihood of confusion." *Int'l Ass'n of Machinists & Aero. Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 201 (1st Cir. 1996).

---

[1] Plaintiff suggests that registration creates a rebuttable presumption that the mark is distinctive and entitled to protection. (Pl.'s Mot. Summ. J. 4.) The cases plaintiff cites in support of this proposition concern trademarks registered under the Principal Register of the United States Patent and Trademark Office. *Bos. Duck Tours*, 531 F.3d at 32 n.32; *Colt Def. LLC v. Bushmaster Firearms, Inc.*, 486 F.3d 701, 708 (1st Cir. 2007). Registration on the principal register "(1) serves as constructive notice of the registrant's claim of ownership of the mark; (2) is prima facie evidence of the validity of the registered mark and of the registration of the mark, of the owner's ownership of the mark, and of the owner's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate; and (3) can make a mark incontestable once a mark has been registered for five years," *Matal v. Tam*, 137 S. Ct. 1744, 1753 (2017) (quotations and citations omitted). These rights are derived from the provisions of the Lanham Act. *Id.* There is no analogue to these statutory provisions or the Principal Register under Maine law, so the court cannot conclude that registration of a mark with the Maine Secretary of State confers the same rights that registration with the Principal Register does.

7

The texts are similar, but distinguished by the inclusion of the word "Pediatric" in "Dirigo Pediatric Dentistry." Each practice holds itself out to the public using distinct logos in their respective marketing materials and signage.

The extent of overlap between DPD and Dirigo Dentistry's respective services is unclear. DPD specializes in pediatric dentistry, whereas Dirigo Dentistry practices general dentistry. However, both businesses have children as clients. DPD and Dirigo Dentistry are located in Yarmouth and Bangor, respectively, but both contend that they hold themselves out to patients throughout the State of Maine.

There is some evidence of actual confusion. It is undisputed that Dirigo Dentistry has received communications intended for DPD, including a fax from a third-party vendor intended for DPD, an email from a parent of a DPD patient incorrectly sent to Dirigo Dentistry's email address, and approximately ten phone calls made to Dirigo Dentistry that were intended for DPD.

There is record evidence supporting a finding of likelihood of confusion. Therefore, "the evidence as a whole, taken most hospitably to the markholder, generates a triable issue as to likelihood of confusion." *Int'l Ass'n of Machinists & Aero. Workers*, 103 F.3d at 201.

The entry is

> Dirigo Pediatric Dentistry, P.C.'s Motion for Summary Judgment is DENIED.

> The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date:  6/30/2021

MaryGay Kennedy
Justice, Superior Court

8